UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEEVEE TOONS, INC.,
(d/b/a TVT RECORDS),

      Plaintiff,

v.                                                                  Case No. 05-71243
                                                 Hon. Sean F. Cox

OVERTURE RECORDS, SCOTT SANTOS,
LAWRENCE SANTOS, and
NUMBER 6 RECORDS, LLC,

      Defendants.

_____

## OPINION AND ORDER

This matter is before the Court on Cross-Motions for summary judgment. Both parties have fully briefed the issues and a hearing was held March 8, 2007. For the following reasons, the Court (1) **DENIES** Plaintiff's Motion for summary judgment on its claims; and (2) **GRANTS** in part, and **DENIES** in part Plaintiff's Motion for summary judgment on Defendants' Counterclaims. Summary judgment is granted on Defendants' Counterclaim of interference with contract; summary judgment is denied on Defendants' Counterclaims for breach of contract and conversion. The Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment on Plaintiff's claims. Summary judgment is granted on Plaintiff's claim of breach of contract against Larry Santos and Plaintiff's claim of unjust enrichment as to all Defendants; summary judgment is denied on Plaintiff's claim of breach of contract against

1

Overture Records, Scott Santos, and Number 6 Records.

## I.   BACKGROUND

This action arises out of an alleged breach of contract.  Plaintiff TeeVee Toons, Inc. ("TVT") and Defendant Overture Records ("Overture") are entities engaged in the music industry.  Defendant Scott Santos is the owner and operator of Overture (collectively Defendants).  On November 11, 1999, TVT and Overture entered into a distribution contract whereby Overture would find artists and record music and TVT would take the master recordings and arrange for copying and distribution.  Under the agreement, TVT would pay Overture on a draw down basis, and would recoup its expenditures through Overture's net receipts.  The agreement was for a term of five years commencing on December 1, 1999 and ending on November 30, 2004.  The agreement provided that if Overture or any Overture entity, defined as an entity owned or controlled by Scott Santos, produced any records, the records would be distributed through TVT.

On November 15, 1999, Overture records entered into an exclusive licensing agreement with solo recording artist Esham Smith ("Esham"), and the group Natas.  Esham was a member of the group Natas.  The other members were Garry Reed and Terry Jones.  Overture claims this exclusive licensing agreement gave Overture the right to distribute recordings already in existence, but did not give it ownership of the copyrights in the existing recordings.

On November 24, 1999, Overture entered into an exclusive recording agreement with Esham and Natas.  This agreement provided that the copyright in any new recordings would be owned by Overture.

Under the agreement, Overture received over $1.1 million, including advances.  However,

2

TVT claims that Overture stopped communications with TVT in June 2001. TVT alleges that Overture failed to provide TVT a letter notifying that it was in breach, as was required under the distribution agreement. Contrary to TVT's allegations, Overture alleges that it was TVT who cut off communications and eventually abandoned the contract. TVT alleges that Overture still owes a balance for unrecouped draws. Overture was informed it owed a balance via a February 2002 email exchange.

On June 2, 2001, Esham, through his company Gothom Music, sent a notice to Overture that it was in breach of the recording agreement because it failed to pay Natas an advance that was due. While Overture denies it was in breach because no advance was due under the contract, Overture nonetheless sent notice on August 3, 2001 that it was releasing Natas from its recording agreement with Overture. Overture points out that it did not release Esham as an individual from either agreement, and that it did not release Natas from the licensing agreement.

In the fall of 2001, Defendant Larry Santos, father of Scott Santos, formed Defendant Number 6 Records. Number 6 signed Natas to a recording deal. Defendants allege that Scott Santos had no involvement and received no salary from Number 6 Records. In December 2001, Scott Santos went to New York to meet with representatives at Koch to discuss a distribution agreement between Koch and Number 6 Records. Scott Santos alleges he received an "agent's fee" of between $30,000 and $40,000 for introducing Number 6 to Koch.

Number 6 Records recorded the Natas album "Godlike." The album was distributed through Koch. By November 5, 2002, after recording three albums, Larry Santos decided to stop putting records out through Number 6 Records.

On December 8, 2004, TVT filed a Complaint in Oakland County Circuit Court alleging:

3

(1) breach of contract; and (2) unjust enrichment.  The action was removed to this Court on

March 30, 2005.  Defendants Overture Records and Scott Santos filed an Answer with

Counterclaims on April 7, 2005.  Overture Records asserts counterclaims for (1) copyright

infringement; (2) breach of contract; (3) conversion; and (4) interference with contracts.  Scott

Santos asserts counterclaims for:  (1) copyright infringement; and (2) breach of contract.

On December 7, 2006, Plaintiff filed a Motion for summary judgment on its claims; and a

Motion for summary judgment on Defendants' counterclaims.  Defendants filed a Motion for

summary judgment on TVT's claims on December 8, 2006.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have

[the] effect of establishing or refuting one of the essential elements of the cause of action or

defense asserted by the parties, and would necessarily affect application of appropriate

principle[s] of law to the rights and obligations of the parties."  *Kendall v. Hoover Co.*, 751 F.2d

171, 174 (6th Cir. 1984).  The court must view the evidence in the light most favorable to the

nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor.

*Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.    ANALYSIS

As an initial matter, without objection, this case was removed from state court despite

4

2:05-cv-71243-SFC-WC   Doc # 36   Filed 04/05/07   Pg 5 of 12   Pg ID 1358

that fact that Defendants, at least in part, are residents of the forum state. See 28 USC §1441(b). However, this does not affect the Court's jurisdiction. See *Federal National Mortgage Association v. LeCrone*, 868 F.2d 190, 193-195 (6th Cir. 1989); and *Thompson v. Karr*, 182 F.3d 918, *4 (6th Cir. 1999)(unpublished table decision).

Additionally, Defendants alternate between relying on Michigan and New York contract law. The distribution agreement between TVT and Overture provides that New York law governs the contract. [Plaintiff's Exhibit A-2, ¶19(g)]. Defendants fail to identify any basis for ignoring the contractual choice of law provision. Thus, the Court applies New York law with respect to breach of the distribution agreement. Michigan law applies to all other state law claims.

### A.    Plaintiff's Claims

#### 1.    Breach of Contract

Based on TVT's Response to Defendants' Motion for summary judgment, TVT appears to assert a breach of contract claim only against Overture, Number 6 Records and Scott Santos. No evidence was presented that Larry Santos was a party to the distribution agreement. To the extent it alleged a breach of contract claim against Larry Santos, TVT's claim is dismissed.

Both parties move for summary judgment on TVT's claim of breach of contract. However, it is clear that there are unresolved issues of fact that preclude judgment as a matter of law.

##### a.    breach of obligation to pay

The parties dispute whether TVT is entitled to summary judgment for Overture's alleged failure to pay outstanding balance from its draw down agreement with TVT. TVT claims it is

5

entitled to summary judgment against Overture and Scott Santos for $387,528.95.

Defendants argue that TVT is not entitled to summary judgment because it did not satisfy the notice and cure provision of the agreement. Additionally, Defendants allege that TVT may have provided fraudulent accounting statements and destroyed evidence.

TVT contends that it satisfied the notice and cure provision by filing its Complaint, and moreover, notice would have been futile. TVT also points out that Defendants never requested an audit or objected to the accounting statements.

The notice and cure provision referenced by the parties provides:

> <u>Breach, Notice and Cure</u>. Other than a breach of the exclusivity provisions hereof, no breach of this Agreement by Overture shall be deemed material unless within 60 days after TVT learns of such breach, TVT serves written notice on Overture specifying the nature thereof and Overture falls [sic] to cure such breach, if any, within 30 days after receipt of such notice (or 10 business days in the case of a failure by Overture to pay a sum certain). No breach of this Agreement by TVT shall be deemed material unless within 60 days after Overture learns of such breach, if any, within 30 days after receipt of such notice (or 10 business days in the case of a failure by TVT to pay a sum certain).

[Plaintiff's Exhibit A-2, ¶19(c)].

TVT relies on the distribution agreement that provides the obligation to pay amounts owed under the agreement is continuing and that expiration of the term of the contract does "not discharge Overture or TVT from their obligations to pay any amounts owing" under the agreement. *Id*. at ¶11(b). TVT contends that it waited until the agreement expired and filed a Complaint alleging breach of contract, which it claims satisfies the notice and cure provision.

Additionally, TVT argues that notice would have been futile because Defendants were already aware of the outstanding balance from the February 2002 email. Defendants failed to make any payments and did not request an audit or object to the accounting. Further, TVT

6

alleges that Defendants abandoned the contract when it did not provide TVT with any more albums because Scott Santos concluded the deal was over. [Plaintiff's Exhibit B-1, pp.116-118]. However, Scott Santos testified that he sent an album after he thought the deal was over. *Id*. at p.118.

Under New York law, where a party abandons a contract, compliance with a notice and cure provision is futile and thus excused. *Wolff & Munier, Inc. v. Whiting-Turner Contracting*, 946 F.2d 1003, 1009 (2nd Cir. 1991). The parties dispute, via deposition testimony, who abandoned the contract first by cutting off communication and failing to fulfill their obligations. "Whether a contract has been abandoned is a question of fact." *Wolff & Munier*, 946 F.2d at 1008. Because the Court cannot resolve questions of fact on a motion for summary judgment, the Court cannot rule which party abandoned the contract, and hence, whether notice and cure would be futile. Summary judgment is inappropriate on this issue.

**b.      breach of exclusive distributorship**

The parties dispute whether Scott Santos breached the exclusive distributorship provisions of the agreement when he facilitated an agreement between Koch and Number 6 Records. TVT relies on the following provisions:

> (a) Exclusive Rights. Overture, on behalf of the Overture Entities, hereby appoints TVT as Overture's exclusive distributor of Products through Normal Distribution Channels during the Term...
> * * *
> Definitions.
> (b) "Overture Entities" - Overture and any other entities in the recorded music business owned or controlled, directly or indirectly, in whole or in part, by Scott Santos (including, without limitation, Overcore Records).

[Plaintiff's Exhibit A-2, ¶1(a) and ¶17(b)]. These are the only provisions that mention the

"Overture Entities."

In TVT's Motion for summary judgment, the parties dispute whether Scott Santos had any control over Number 6 Records, such that it is properly considered an "Overture Entity" and subject to the exclusive distribution agreement. This is clearly a question of fact that cannot be resolved on summary judgment.

However, in their Motion for summary judgment, Defendants also assert that Number 6 Records could not have been bound to the Overture/TVT distribution agreement even if Scott Santos was in control, because Number 6 Records did not exist until two years after the distribution agreement was signed. [Defendants' Motion, p.8]. TVT does not address Defendants' contention. Resolution of this issue requires interpretation of the Overture/TVT distribution agreement to determine if "Overture Entities" was intended to include future entities controlled by Scott Santos, or only those in existence at the time of the agreement.

Under New York law, the threshold question of contract interpretation is whether the contract terms are ambiguous. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2nd Cir. 2000). "Contract language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* Conversely, an ambiguity exists where the terms of a contract are susceptible to "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *International Multifoods Corporation v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2nd Cir. 2002). Whether a contract is ambiguous is a question of law

8

for the court. *Revson*, 221 F.3d at 66. Further:

> In determining a motion for summary judgment involving construction of contractual langugage, **a court should accord that language its plain meaning given due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish**. Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate. The mere assertion of an ambiguity does not suffice to make an issue of fact. Ambiguity resides in a writing when - after it is viewed objectively - more than one meaning may reasonably be ascribed to the language used. Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly.

*Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2nd Cir. 2006)(emphasis added).

The plain meaning of the distribution agreement, when consideration is given to the circumstances and apparent purpose the parties sought to accomplish, is ambiguous as to whether it was meant to apply to future created entities controlled by Scott Santos during the term of the agreement. The language of the agreement is silent on whether it applies to all entities controlled by Scott Santos during the term, or only entities controlled by Scott Santos at the inception of the agreement. The agreement identifies entities "owned or controlled," which seems to refer to entities in existence. However, it is unlikely that the purpose of the agreement was to bind only the entities in existence and hypothetically to allow Scott Santos immediately after signing the agreement to create a new entity that could distribute his records through a different company.

Pursuant to *Palmieri, supra*, because the terms of the distribution agreement are ambiguous, summary judgment is inappropriate. Neither party is entitled to summary judgment on TVT's claim of breach of contract based on violation of the exclusive distribution provision.

## 2.    Unjust Enrichment

9

Under Michigan law[1], whether a party has been unjustly enriched is a question of fact; but, whether a claim for unjust enrichment may be sustained is a question of law for the court. *Pumps v. Centerline Piping, Inc.*, --- N.W.2d ----, 2006 WL 3615682 (Mich.App. 2006).   To sustain a claim for unjust enrichment, the plaintiff must establish: (1) the receipt of a benefit by the defendant from the plaintiff; and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.  *Id*.  "The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another."  *Id*.

TVT fails to state a sustainable claim for unjust enrichment.  TVT claims that the benefit received was the revenue from Koch for the distribution of Natas' album "Godlike." Indisputably, the benefit at issue did not come from TVT, rather, it came from Koch.  The Court will not imply a contract here between Larry Santos and TVT because TVT did not provide a benefit to Larry Santos.  Instead, TVT is arguing it was prevented from obtaining the benefit in the first place because of Defendants.  Moreover, because there is an express agreement covering distribution, the Court cannot imply a contract between Scott Santos/Overture and TVT.  See *Pumps, supra*.  Unjust enrichment is not the proper claim for the relief sought by TVT. Accordingly, Defendants are entitled to summary judgment on TVT's claim of unjust enrichment.

TVT and Overture stipulated to allowing TVT to file a First Amended Complaint that adds a count for tortious interference with contract, which appears to be the proper claim for the relief sought.

---

[1]New York law only applies to interpretation of the distribution agreement.

10

### B.      Defendants' Counterclaims

TVT moves for summary judgment on the counterclaims asserted by Overture and Scott Santos.

#### 1.      Copyright Infringement

Defendants concede that the copyright registrations for the songs allegedly infringed were filed after the counterclaims were initiated.  The parties agreed to allow Defendants to file an Amended Answer with Counterclaims which include the requisite copyright registrations.

TVT argues that it cannot be an infringer because the distribution agreement granted it a security interest in all intellectual property.  Defendants concede that TVT has a security interest in any copyrights from Overture.  However, as Defendants point out, resolution of this question is dependent upon resolution of who abandoned the contract.  Thus, summary judgment is inappropriate on this issue at this time.

#### 2.      Breach of Contract

As discussed above, breach of the distribution agreement cannot be determined until several factual issues are resolved.  Summary judgment is inappropriate at this time.

#### 3.      Conversion

Resolution of the claim for conversion is dependent upon resolution of breach of the distribution agreement.  Accordingly, summary judgment is inappropriate.

#### 4.      Interference with Contract

Defendants concede TVT is entitled to summary judgment on its counterclaim for interference with contract. [Defendants' Response, p.20].

### IV.    CONCLUSION

11

For the foregoing reasons, the Court (1) **DENIES** Plaintiff's Motion for summary judgment on its claims; and (2) **GRANTS** in part, and **DENIES** in part Plaintiff's Motion for summary judgment on Defendants' Counterclaims. Summary judgment is granted on Defendants' Counterclaim of interference with contract; summary judgment is denied on Defendants' Counterclaims for breach of contract and conversion.  The Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for summary judgment on Plaintiff's claims. Summary judgment is granted on Plaintiff's claim of breach of contract against Larry Santos and Plaintiff's claim of unjust enrichment as to all Defendants; summary judgment is denied on Plaintiff's claim of breach of contract against Overture Records, Scott Santos, and Number 6 Records.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

Dated:  April 5, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record
on April 5, 2007, by electronic and/or ordinary mail.

**S/Jennifer Hernandez**
**Case Manager**